IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al.,

Plaintiffs-Appellees,

v.

SOCIAL SECURITY ADMINISTRATION, et al.,

Defendants-Appellants.

No. 25-1411

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY**

On the basis of a legal theory shot through with jurisdictional and merits defects, and after a panel of this Court stayed a materially identical order in *AFT v. Bessent*, the district court entered a preliminary injunction that continues to hobble the Social Security Administration's exercise of its lawful functions and implementation of the President's DOGE Agenda.

Identical circumstances demand identical results. Plaintiffs are unable to explain why any superficial differences between *AFT* and this case alter the motions panel's reasoning regarding the government's

likelihood of success. They do not. And the same equitable considerations govern in both cases. Here as in *AFT*, then, the Court should stay the preliminary injunction (including, as necessary, through an immediate administrative stay).

### A. The Government Is Likely to Succeed on the Merits.

The district court's grant of a preliminary injunction belied three threshold obstacles to relief: plaintiffs lack standing, have not identified final agency action, and are barred from APA relief by the Privacy Act's remedies. On the merits, too, plaintiffs' claims fail: they have not identified a Privacy Act violation—nor, by extension, were defendants' routine activities arbitrary and capricious. Defendants have thus met and surpassed their "need [to] prevail on one" of these issues. Order 8-9, *AFT v. Bessent*, No. 25-1282 (4th Cir. Apr. 7, 2025) (Richardson, J., concurring) (*AFT* Order); *id.* at 12 (noting that the complexity and number of the issues weighs against the plaintiffs). Plaintiffs' response fails to establish otherwise.

#### 1. Plaintiffs lack standing

A "legally and judicially cognizable" injury in fact, *Raines v. Byrd*, 521 U.S. 811, 819 (1997)—is an indispensable element of any federal suit, let

alone one seeking the "extraordinary" relief of a preliminary injunction, *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024). As they must in light of the Court's recent order, *AFT* Order 3 (Agee, J., concurring), plaintiffs agree that they are bound first to establish a "close relationship" between the harm they claim and a "harm traditionally recognized as providing a basis for a lawsuit in American courts." Mot. 8 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)); Resp. 5 (similar). And crucially, all agree that "plaintiffs cannot establish a cognizable injury in fact merely by pleading a statutory violation." Resp. 10; *accord TransUnion*, 594 U.S. at 425-26.

Plaintiffs nonetheless try to skirt these fundamental principles in their leading responsive argument, insisting that their claimed harm is sufficiently akin to the tort of intrusion upon seclusion because "the Privacy Act, applicable federal regulations, and SSA's own practices and public statements" protect the data at issue here. Resp. 6-7. But a historical comparator is what matters, not alleged statutory or policy violations. *TransUnion*, 594 U.S. at 425-26.

As defendants explained in their motion, the required historical analogue is absent here (even if non-physical intrusions may be

cognizable—and defendants have not argued otherwise, *see* Mot. 9; *but see* Resp. 8). Government employees' access to vast datasets, which may or may not lead them to view personal information of plaintiffs' individual members, is nothing like the "intentiona[l] intru[sion] . . . upon the solitude or seclusion of another or his private affairs or concerns" that the common law protects. Mot. 9 (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)); *see also id.* 9-10 (citing examples). That is true even if "SSA's records contain the same information traditionally found in a home," Resp. 5—at bottom, a government employee having job-required access to data about an individual, which the individual voluntarily provided to the government, bears no resemblance whatsoever to that same employee physically intruding into the individual's home or an unauthorized third party rifling through the individual's medical records.

Nor is it conceivably "highly offensive to a reasonable person" for such access to be provided to a small group of government employees, Mot. 9, especially because plaintiffs' members provided their data to SSA with the understanding that government employees would have access to it, *see id.* 10-11. *Contra* plaintiffs, Resp. 7, the district court did not find otherwise; it merely noted at a high level of generality that "[m]embers of

the plaintiff organizations have expressed their belief of an expectation of privacy as to their" personal information. ADD88.[1] To the extent plaintiffs aver that their members expected to be able to micromanage subsequent, legitimate uses of their data, that contention is unsupported by the district court's decision and is unreasonable in any event.

In response, plaintiffs rely on *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022). Resp. 10. But this Court has already rejected precisely the same reading they advance here. *AFT* Order 4-6 (Agee, J., concurring). Then, without citation, plaintiffs argue that it "should be self-evident" that intragovernmental data access is similarly offensive to rifling through a neighbor's mail. Resp. 9. This Court did not think so. *AFT* Order 6 (Agee, J., concurring), 11-12 (Richardson, J., concurring). Attempting to distinguish *AFT*, plaintiffs cite one statement explaining that SSA personnel may be required to contact individuals whose information is held by the agency. Resp. 9-10. It is not apparent, nor do plaintiffs explain, why that matters. And in any event, plaintiffs do not allege that SSA has

---

[1] On April 24, the district court amended its opinion to correct minor, cosmetic issues. Dkt. 156 & 157. For simplicity, defendants continue to refer to the original opinion, included in the addendum to their motion.

contacted them or otherwise used their information in a manner that intrudes on their seclusion.

Without a suitable direct comparison, plaintiffs resort to high levels of abstraction. They first invoke an individual's right to "control" his or her personal information. Resp. 8-9 (quotation omitted). But the very same case plaintiffs cite observes that "the extent of the protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). Here, plaintiffs have alleged at most intragovernmental dissemination, which is not akin to unauthorized intrusions into the private spheres of others. Furthermore, plaintiffs relinquished "control" of their information in relevant respects when they voluntarily provided it to the government on the understanding that it would be routinely accessed by agency employees. *See supra*.

Plaintiffs also point to Judge Richardson's characterization of intrusion upon seclusion as guarding against a "feeling of unease." Resp. 9 (quoting *AFT* Order 10). But Judge Richardson's analysis does not help plaintiffs, as he concluded in materially identical circumstances that the required "sort of harm [was] not present" in *AFT*. *AFT* Order 11. In other

words, intragovernmental disclosure of private information cannot give rise to actionable feelings, however genuine, of unease. *See* Resp. 9 (citing record evidence).

**2. Plaintiffs have not identified final agency action**

Defendants have explained why review of day-to-day agency management (like granting new employees access to necessary systems) is impermissible "general judicial review" of something other than "agency action," which is forbidden by the APA. Mot. 16 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 899 (1990)). That is true whether or not an agency's managerial decisions represent a "sea change" from past practice. Resp. 11 (quoting ADD111); *see also Lujan*, 497 U.S. at 890 (describing unreviewable activity as "constantly changing").

Because the activity plaintiffs challenge is not "agency action," it cannot be "final" agency action (even if it involves the Acting Commissioner, Resp. 11), as the APA requires. Most centrally, the agency's onboarding of new personnel and its decision to grant those new employees access to data systems does not alter plaintiffs' members' rights or obligations, nor carry legal consequences for those members, distinguishing this case from *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d

925 (D.C. Cir. 2008). *See* Resp. 12. There, the court recognized that unauthorized third-party disclosures can have direct, immediate consequences for plaintiffs. *See* 530 F.3d at 931. By contrast, review of data contained in internal agency systems by agency employees does not threaten the same immediate harms. *Cf. Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240, 1245-50 (11th Cir. 2022) (en banc) (explaining that without third-party disclosure, claims founded on internal disclosure of data do not state a cognizable injury for standing purposes).

**3. Plaintiffs' claims are meritless**

Apart from standing and APA reviewability, defendants are likely to succeed for three additional reasons: plaintiffs cannot raise an alleged Privacy Act violation under the APA, they have not made out such a violation anyway, and their claim of arbitrary-and-capricious action cannot piggyback on their flawed Privacy Act theory.

**a. The Privacy Act's remedies foreclose relief**

The Privacy Act provides a "comprehensive remedial scheme" for violations thereof, *see Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008), making APA review unavailable, 5 U.S.C. § 704. Mot. 19-21. This Court has already explained why *Doe v. Chao*, 435 F.3d 492, 505 n.17 (4th Cir.

2006), does not compel a contrary conclusion: because the relevant discussion appears in dicta. *AFT* Order 13-14; *but see* Resp. 12-13. And the reasoning of a district court outside this Circuit that concluded otherwise is, respectfully, unpersuasive. *See* Resp. 12-13 (citing *Alliance for Retired Ams. v. Bessent*, No. 25-0313, 2025 WL 740401 (D.D.C. Mar. 7, 2025)). Rather, as described in the motion, Congress's decision to provide narrow, targeted causes of action for damages or particular kinds of injunctive relief under the Privacy Act strongly suggests that it did not intend to allow plaintiffs to end-run that carefully constructed scheme via APA claims. Mot. 19-21.

**b. Plaintiffs' Privacy Act claim fails on the merits**

The Privacy Act permits disclosure of a record ("any item, collection, or grouping of information about an individual," 5 U.S.C. § 552a(a)(4)) to any officer or employee of an agency who has a need for the record in the performance of his duties. *Id.* § 552a(b)(1). The district court assumed that the SSA DOGE team consisted of SSA employees. ADD124. That assumption was well founded, taking into account "all the circumstances," Resp. 16 (quotation omitted). *See* Dkt. 36-2.

Plaintiffs attack the relevant employees' "need" for the records access they have by arguing that the need defendants have identified is insufficiently specific. Resp. 14-15. But there is no statutory requirement of specificity that renders the defendants' priorities—a technology modernization project, and the prevention of fraud—insufficient to justify systems access to effectuate them. Indeed, the "need" is obvious. *AFT* Order 14 (Richardson, J., concurring). Similarly, the Privacy Act does not distinguish between anonymized data and non-anonymized data. *See* 5 U.S.C. § 552a(a)(4), (b)(1) (referring only to disclosure of "records"). So it does not matter if SSA *could* do some of its work with anonymized data. Resp. 15. The Privacy Act is not a vehicle for private parties to impose their vision of data minimization best practices on federal agencies and for courts to micromanage those practices.

**c. Defendants did not act arbitrarily or capriciously**

In the span of less than two pages (of 145), the district court found SSA's provision of systems access to certain employees to be arbitrary and capricious. ADD143-44. To start, the district court could only reach this conclusion because it improperly considered SSA to have taken final agency action. Viewed in its proper light, as defendants have explained,

the provision of access here was unreviewable, routine, internal administration. *See supra*. Defendants were thus not required to "disclose[ or] acknowledge[] a change in position," "explain[] their choice" of policy, or "consider[]" reliance interests, Resp. 16-17, all doctrines that presuppose reviewable action.

Even if final agency action were present, the district court's finding of arbitrary-and-capricious action rested on little more than a repackaging of its conclusion that plaintiffs were likely to succeed on the merits of their Privacy Act claim (as the brevity of its analysis confirms). ADD143 ("As discussed, defendants have not provided the Court with a reasonable explanation for why the entire DOGE Team needs full access . . ."). For the same reasons plaintiffs have not made out a Privacy Act violation, then, *see supra*, plaintiffs' arbitrary-and-capricious challenge is without merit.

**B. The Remaining Factors Favor a Stay.**

The remaining factors—irreparable harm, the balance of harms, and the public interest—likewise favor the requested stay. Since it was entered, the district court's preliminary injunction has continued to inflict considerable, irreparable harm (not analogous to losses of "money, time and energy" in suits between private parties, Resp. 19) on the interests of

the Executive Branch. Beyond the indignity of an unjustified judicial intrusion into the operations of a coequal branch, the injunction hinders the progress of important reform efforts. The fact that the agency has not previously undertaken these efforts, Resp. 18-19, underscores (not weakens) defendants' need to move expeditiously. And it is no answer to say that the district court's order permits defendants to use anonymized data or to follow cumbersome, unworkable processes to use non-anonymized data, Resp. 18—for one thing, this distinction is without a basis in law, *see supra*, and for another, the impingement on effective functioning of government will remain. *See* Dkt. 62-1, 74-1 (detailing these harms).

By contrast, plaintiffs cannot show any harm at all (much less irreparable harm) from SSA's intra-agency disclosure of information, where employees who view that information are subject to the same confidentiality obligations that apply to other similarly situated agency employees, as other courts addressing similar claims have held. *See* Mot. 25-26 (citing cases). Plaintiffs maintain that the *AFT* Order does not control, but say little more than that the record here is "different." Resp. 19-20. Whatever differences exist are immaterial: the reality is that in both

cases, the plaintiffs claimed irreparable injury analogous to privacy torts from intra-agency disclosures of their information. That theory was insufficient in *AFT*, and it is insufficient here.

Considerations of injury to the government and the public interest "merge" under the present circumstances. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Even if considered independently, however, the public interest favors defendants, because the preliminary injunction unduly impinges on the Executive Branch's ability to effectuate promised policy. Plaintiffs' attempted rebuttal (at 20-21) merely collapses their mistaken view of the merits with the public interest. Even if that simplification of the test for equitable relief were legally sound, *but see Winter v. Natural Res. Def. Council*, 555 U.S. 7, 21-22 (2008), the infirmities in plaintiffs' claims correspondingly weaken their invocation of the public interest. *See supra*.

Finally, plaintiffs do not seriously contest that, if the government is likely to succeed on the merits of its appeal for any reason, the remaining stay factors are also met. While this Court's review of the district court's discretion in balancing of the harms is deferential, a district court necessarily "abuses its discretion when it . . . commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). As explained

above, the district court committed several such errors of law here: on standing, irreparable harm, and in subjecting the agency activity at issue here to APA review at all, let alone finding a violation of the law that would warrant enjoining important agency actions taken in furtherance of a Presidential policy directive.

## CONCLUSION

For these reasons and those explained in the government's motion, this Court should stay the district court's preliminary injunction pending appeal, and should grant an immediate administrative stay pending consideration of the stay pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
GERARD SINZDAK
JACK STARCHER
JACOB CHRISTENSEN
SIMON G. JEROME
*s/ Simon G. Jerome*
(202) 514-1673
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Room 7209*
*Washington, DC 20530*

APRIL 2025

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion satisfies the type-volume requirements set out in Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,599 words. This motion was prepared using Microsoft Word in Book Antiqua, 14-point font, a proportionally spaced typeface.

*s/ Simon G. Jerome*
Simon G. Jerome

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Simon G. Jerome*
Simon G. Jerome