No. 25-1411

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al.,

Plaintiffs-Appellees,

v.

SOCIAL SECURITY ADMINISTRATION, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Maryland

**SUPPLEMENTAL BRIEF FOR APPELLANTS**

BRETT A. SHUMATE,
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
JACK STARCHER
SIMON JEROME
JACOB CHRISTENSEN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-8877*

**TABLE OF CONTENTS**

**<u>Page</u>**

ARGUMENT ...................................................................................................1

I. Plaintiffs Fail to Establish a Cognizable Article III Injury ......................3

II. Plaintiffs Do Not Challenge Final Agency Action Reviewable Under the APA ...................................................................................................7

III. Plaintiffs' Claims Fail on the Merits..........................................................8

IV. Plaintiffs Fail to Establish the Remaining Preliminary Injunction Factors ...................................................................................................11

CONCLUSION ..............................................................................................12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bigelow v. Department of Defense*,
  217 F.3d 875 (D.C. Cir. 2000) .................................................................. 10

*Califano v. Yamasaki*,
  442 U.S. 682, 702 (1979) ............................................................................. 5

*City of New York v. U.S. Dep't of Def.*,
  913 F.3d 423 (4th Cir. 2019) ...................................................................... 7

*Davilla v. Enable Midstream Partners L.P.*,
  913 F.3d 959 (10th Cir. 2019) ................................................................. 4-5

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
  48 F.4th 1236 (11th Cir. 2022) (en banc) ............................................... 6-7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................ 3, 6

*Lewis v. Casey*,
  518 U.S. 343 (1996) ..................................................................................... 5

*New Comm Wireless Servs., Inc. v. SprintCom, Inc.*,
  287 F.3d 1, 13 (1st Cir. 2002) ................................................................. 4-5

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) .............................................................. 2-3, 5

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ..................................................................................... 5

**Regulatory Materials:**

Exec. Order No. 14,158, § 4(a), 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025), 90
    Fed. Reg. 8441, 8441 (Jan. 29, 2025) ............................................................8, 9

# ARGUMENT

The injunction on appeal before this Court enjoins the Social Security Administration (SSA) from granting certain SSA employees access to SSA operated and maintained systems. JA1293-1294; *see also* JA1297 (defining "DOGE Team" to mean employees "assigned to SSA"). The district court issued that injunction based on a series of novel legal conclusions. It held that giving agency employees general access to agency systems works a cognizable, Article III privacy harm on every person with information in that system. It held that kind of general-access-based privacy harm is sufficiently severe and irreparable to justify a preliminary injunction. It held that agency decisions about how to onboard, train, and give systems access to agency employees are "final agency actions" challengeable under the Administrative Procedure Act (APA). And it held that the Privacy Act—which allows agency employees to access agency-run systems in order to perform their jobs—authorizes district courts to second guess both the need the agency asserts and the level and nature of access the agency deems necessary to achieve the agency's objectives. All those legal conclusions are baked into the injunction that the district court granted—both because the court relied on those legal conclusions in deciding to

exercise its discretion to grant injunctive relief, and because the scope of the injunction it granted directly reflects those holdings. For all the reasons given in the government's briefing, each of those legal conclusions is wrong. And if this Court agrees with defendants on any one issue, the injunction should be vacated.

The corrected record, which makes a handful of minor corrections and clarifications to statements made in declarations submitted by SSA in March 2025, has no bearing on any of those issues. The legal questions raised by this appeal (and addressed in the parties' principal briefs) do not turn on any contested facts. To the extent plaintiffs intend to suggest that anything in the corrected record might allow them to develop or present *different* legal theories, and to then ask the district court to enter a *different* injunction based on those theories, that has no bearing on this appeal. Because the "decision whether to grant a preliminary injunction is a matter of discretion, not a question of right," a court generally may not affirm or amend a preliminary injunction based on "a legal theory not embraced by the district court." *Sherley v. Sebelius*, 644 F.3d 388, 397-98 (D.C. Cir. 2011) (noting that neither the parties nor the Court found "any precedent for

2

upholding a preliminary injunction based upon a legal theory not embraced by the district court").

I.     **Plaintiffs Fail to Establish a Cognizable Article III Injury**

The theory of standing that the district court accepted—and that plaintiffs have pressed before this Court—is that defendants' decision to grant certain SSA employees access to SSA data systems containing information about millions of Americans works a constitutionally cognizable privacy harm against every individual with data contained in that system. The court reached that conclusion by holding that, under the standard announced by the Supreme Court in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the general discomfort one might experience from knowing that a particular set of SSA employees have general access to SSA data systems is closely analogous to the harm underlying the common law tort of intrusion upon seclusion.

As explained in defendants' briefs, there are numerous defects with the district court's conclusion on that score, any one of which is sufficient to vacate the preliminary injunction on appeal. First, merely granting general access to data in a system is not analogous to the kinds of invasive intrusions into private matters and spaces recognized by the common law

3

tort. Second, plaintiffs do not allege that anyone actually targeted or even looked at any private information associated with them or their members. And third, even if they had, the Restatement and case law recognize that internal review of data lawfully obtained and retained by an entity is categorically not the kind of intrusion recognized by the common law tort.

Nothing in the corrected record has any bearing on those defects. Most fundamentally, nothing in the corrected record changes the nature of the injury that plaintiffs alleged and that the district court relied on in issuing the injunction on appeal. Although plaintiffs pressed an alternative theory of standing below—namely, that the data access decisions also subjected them to a marginal increased risk of identity theft due to the possibility that their data might be exposed to third parties—the court expressly rejected that theory of standing. JA1353 n.26. That is the end of the matter, because a court ordinarily may not affirm a preliminary injunction based on a legal theory not accepted by the district court. *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 974 (10th Cir. 2019) (appellate court "should generally refrain from 'upholding a preliminary injunction on a ground that was not fully addressed' below" (alteration omitted) (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d

1, 13 (1st Cir. 2002)); *Sherley*, 644 F.3d at 397-98 (noting that neither the parties nor the Court found "any precedent for upholding a preliminary injunction based upon a legal theory not embraced by the district court").

Applying that general rule is particularly appropriate here given the nature of the injunction the district court entered. Because the court thought that general, intra-governmental access and review of SSA systems was itself a privacy harm analogous to the common law tort, the injunction on appeal is unsurprisingly constructed to target and prohibit only that kind of intra-governmental access. *See* JA1293-1294. Any alternative theory of injury plaintiffs might now raise, by contrast, would have led to a different injunction aimed at redressing that distinct injury, not the present injunction restricting intra-government and intra-SSA access. *See Trump v. CASA, Inc.*, 606 U.S. 831, 853-54 (2025) (injunction must be no "'more burdensome than necessary to redress' [the plaintiffs'] asserted harms" (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979))); *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (vacating injunctive relief unconnected to "the inadequacy which the suit empowered the court to remedy").

Even if this Court could consider an alternative theory of injury based on some increased risk of identity theft or fraud due to possible

third-party disclosure, nothing in the corrected record provides any support for such a theory. To support standing under such a theory, plaintiffs would have to show that their data was shared with some third party in a way that created some "actual or imminent" risk of harm. *TransUnion*, 594 U.S. at 423. Nothing in the corrected record indicates that any of plaintiffs' SSA data was shared with any third party. *See* Notice of Corrections to the Record (Notice), Dkt. No. 197, at pp. 4-5 & n.1 (explaining that two SSA DOGE team employees communicated with an outside advocacy group in possible violation of the Hatch Act, but that SSA has seen "no evidence that SSA data were shared" with that group); Notice at pp. 5-6 (stating that, during a ten-day period in March 2025, members of SSA's DOGE team ran afoul of SSA data security policies by using a private cloud server provider (Cloudflare) to share data, but giving no indication that Cloudflare accessed or viewed any of the data that was shared via its service). And even if it did, mere third-party disclosure, without more, would not establish a "concrete, particularized, and actual or imminent" risk of identity theft or fraud. *TransUnion*, 594 U.S. at 423. Indeed, as another circuit has held, limited third-party disclosure is insufficient to establish an analog to common law privacy torts. *See Hunstein v. Preferred*

*Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240-41, 1245-50 (11th Cir. 2022) (en banc) (sending private information to third-party mail vendor insufficient to establish harm analogous to "public disclosure of private facts," another common law "invasion-of-privacy" tort (quotation omitted)).

## II. Plaintiffs Do Not Challenge Final Agency Action Reviewable Under the APA

The corrected record does not alter whether the loosely-defined series of personnel decisions related to granting individual agency employees access to internal agency systems is properly termed "final agency action," as the district court concluded. Nothing in the corrected record makes those day-to-day, intra-agency decisions any more reviewable under the APA: As this Court has held, courts "are woefully ill-suited … to adjudicate" "attack[s]" "asking [the judiciary] to improve an agency's performance or operations." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (quotation omitted).

Nor is the action the district court identified "final" for APA purposes, because internal data access decisions do not impose obligations, regulate plaintiffs' conduct, or otherwise impose any direct legal

7

consequences for plaintiffs or anyone else. Br. 43-45. The corrected record could not—and does not—change in any way the court's novel and erroneous legal conclusions about the reviewability of the agency actions at issue.

## III. Plaintiffs' Claims Fail on the Merits

As explained in defendants' principal briefs, the district court's analysis of plaintiffs' claims (1) failed to give proper weight to the objectives expressed in the President's Executive Order creating the SSA DOGE teams and (2) turned on a fundamental misunderstanding of the Privacy Act. The corrected record does not change the validity of the directives set forth in that Executive Order, nor does it affect the meaning of the Privacy Act exception at issue in this appeal.

The district court thought that plaintiffs are likely to succeed on the merits of their Privacy Act and arbitrary and capricious claims because SSA did not adequately explain why DOGE team members needed to be given system access to accomplish their mission. But that assertion is entirely undercut by the presidential directive that created the DOGE team in the first place. Br. 48-53. That Executive Order directed DOGE teams to undertake an ambitious operation "to improve the quality and efficiency of

8

government-wide software, network infrastructure, and information technology … systems." Exec. Order No. 14,158, § 4(a), 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025).

That objective is unquestionably a legitimate one—neither the district court nor plaintiffs seriously suggest otherwise. And it is self-evident why SSA would conclude that, in order to "improve the quality and efficiency" of SSA data systems, it would need to grant the employees tasked with that work broad access to those systems. The Executive Order itself unsurprisingly directs as much. Exec. Order No. 14,158, § 4(b) (directing agencies to "ensure [the DOGE team] has full and prompt access to all unclassified agency records, software systems, and IT systems," and that those teams shall "adhere to rigorous data protection standards"). Indeed, plaintiffs acknowledge that "30 to 40 employees at SSA" already had the same level of access to SSA systems in order to perform agency work. Resp. 45. The district court's insistence that SSA nevertheless failed to explain or justify its data access decisions cannot be squared with those facts. Nothing in the corrected record changes any of that.

The corrected record also has no relevance to the district court's novel and erroneous reading of the Privacy Act's "need" exception. As

explained in defendants' principal briefs, neither the district court nor plaintiffs identify any decision outside the context of this and related litigation in which a court has read "need" as narrowly as the district court did here. Indeed, the case the district court and plaintiffs principally rely on—*Bigelow v. Department of Defense*, 217 F.3d 875 (D.C. Cir. 2000)—would have come out the other way under the district court's understanding of the Privacy Act. Obviously, nothing in the corrected record changes the meaning of the Privacy Act or salvages the district court's novel misinterpretation of the statute.

To the extent that plaintiffs argue that the corrected record suggests that some individual SSA employees shared SSA data with government employees outside of SSA, that has no bearing on this Court's review of the preliminary injunction on appeal. *See* Notice at pp. 2-3 (identifying a single instance in March 2025 where an SSA employee may have shared data with employees at other federal agencies). The injunction on appeal—mirroring plaintiffs' claims—focuses on SSA's decision to grant systems access to its own employees. Indeed, while plaintiffs argued that some of the DOGE team members were not SSA employees below, the district court did not accept that argument. *See* JA1416 (assuming that the relevant team

members "have 'intra agency' status at SSA"). Nothing in the corrected record suggests that SSA provided access to any agency systems containing sensitive data to anyone not employed by SSA. And of course, if the district court thought that plaintiffs were likely to succeed on their Privacy Act claim because some of the individuals given systems access were not actually employees of SSA, it would have structured its injunction differently, including by distinguishing between SSA employees and employees of other agencies in identifying who was prohibited from accessing SSA data and systems.

## IV. Plaintiffs Fail to Establish the Remaining Preliminary Injunction Factors

Finally, nothing in the corrected record has any bearing on the remaining preliminary injunction factors. On irreparable harm in particular, it bears emphasis that all the corrections to the record concern statements SSA made in March 2025 well before the district court issued the preliminary injunction at issue in this appeal. None of those corrections support the district court's holding that plaintiffs had established that they faced some future, irreparable harm at the time the preliminary injunction issued.

## CONCLUSION

For the foregoing reasons, the handful of minor corrections and clarifications to statements made in declarations submitted by SSA in March 2025 has no bearing on any of the legal questions presented in this appeal. For all the reasons given in defendants' principal briefs, the preliminary injunction entered by the district court should be vacated.

Respectfully submitted,

BRETT A. SHUMATE,
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant*
  *Attorney General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
BRAD HINSHELWOOD

 /s/ Jack Starcher
JACK STARCHER
SIMON JEROME
JACOB CHRISTENSEN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-8877*

February 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with this Court's February 12, 2026, order because it is no more than 15 pages. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*s/ Jack Starcher*
Jack Starcher

# CERTIFICATE OF SERVICE

I certify that on February 19, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*
Jack Starcher